## MURRAY et al. v. HODO.

(District Court, N. D. Texas, at Dallas. September 12, 1921.)

No. 2839–95.

1. **Patents ⬤⟳328—1,086,204, for cotton gin, claim 80, held not infringed.**
    The Murray patent, No. 1,086,204, for improvement in cotton gins consisting of a suction device for removing lint from the gin saws, is not for a pioneer invention, but for an improvement only, and must be narrowly construed and limited to the combination of essential parts described and shown in the specification and drawings. As so construed, claim 80 *held* not infringed by a gin constructed in accordance with the Hodo patents, Nos. 1,203,739 and 1,230,298.

2. **Patents ⬤⟳174—Claims for improvements not broadly construed.**
    Where a patent does not embody a primary invention but only an improvement on the prior art, the claims cannot have such a liberal construction as applied to pioneer inventions.

3. **Patents ⬤⟳167(1)—Claims must be limited by specifications and drawings.**
    The claims of a patent must be limited in their scope to the invention as shown in the drawings and described in the specifications.

In Equity. Suit by Stephen D. Murray and the Murray Company against Wesley A. J. Hodo. Decree for defendant.

Oliver Mitchell, of Boston, Mass., and J. J. Eckford, of Dallas, Tex., for plaintiffs.

A. L. Jackson, of Fort Worth, Tex., for defendant.

⬤⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

MEEK, District Judge. This is a suit by Stephen D. Murray, of Dallas, Tex., and the Murray Company, a Texas corporation, based upon the alleged infringement of United States letters patent No. 1,086,204, dated February 3, 1914, issued to said Stephen D. Murray, under which patent the other plaintiff, the Murray Company, is exclusive licensee by grant from Murray. The patent relates to cotton gins, and the objects of the same are to provide novel means for the removing of lint cotton from the teeth of the gin in an expeditious and reliable manner.

The bill avers that the defendant is infringing the plaintiff's right under said letters patent and threatens and intends to continue such infringement, and prays for an injunction to prevent such infringement and for an account.

The defendant Wesley A. J. Hodo, of Fort Worth, Tex., alleges in his answer, among other defenses, the following:

Paragraph 8: "The defendant charges that alleged letters patent are so limited in scope by the prior art that it is entitled to only the narrowest possible construction, and that when so limited the defendant is not infringing said alleged letters patent, and cites patents in the prior art as follows: Patent No. 552,382, Dec. 31, 1895, saw cotton gin to Lumpkin et al.; Patent No. 632,685, Sept. 5, 1899, cotton gin, to Thomas; Patent No. 568,610, Sept. 29, 1896, cotton gin, to Graber; Patent No. 700,347, May 20, 1902, cotton gin, to Lumpkin—as anticipating the invention claimed in said alleged patent to Murray."

Paragraph 11: "The defendant denies that he is making, selling, or using, or that he ever has made, sold, or used the construction shown in said alleged patent, and declares that he is manufacturing, selling, and using the inventions shown in letters patent granted to him as follows: Patent No. 1,203,739, dated November 7, 1916, for cotton ginning, cleaning, and bleaching mechanism, and patent No. 1,230,298 process of ginning, cleaning, and bleaching mechanism, dated June 19, 1917."

The patentee, Murray, gives what he terms the "salient feature of his invention" on page 1, lines 48 to 79 of his patent, as follows:

"The salient feature of the invention is, however, a tubular member longitudinally disposed in the body of the gin and laying along the ginning mechanism, and, as will be hereinafter noted, this tubular member will also prominently and effectively serve to connect the legs of the gin frame as shown assembled in operative relation to the gin saws, to the teeth of which air currents of high velocity are practically and continuously applied and with substantially undiminished action during a considerable portion of the revolution of the saws, the air currents being caused to travel in a path coincident with the path traveled by the saw teeth and encompassed narrowly about the ginning teeth to conserve the force of the air current for removing the lint and reduce the amount of air and power that has heretofore been necessarily employed in removing lint from gin teeth. The use of this tubular member is not confined to this particular application of air, nor with the special form of gin which will be hereinafter particularly described, but is equally well adapted for use in connection with other gins, particularly to perform two of its most important functions, and which are to connect the legs of the gin frame and act as a conduit for receiving the lint cotton from the saws or ginning apparatus and conducting it away from the gin."

The following is figure 5 taken from the Murray patent, No. 1,086,-204. This is an enlarged view in cross-section of one of the gins:

Page 2 of patent, line 32 to line 94, of specification:

*Fig 5.*

"The numeral 7 indicates a concave at the rear side of the gin which, as shown, embraces a large portion of the gin saws, it being shown in the present instance as embracing about one-third of the periphery of said saws. The concave forms one wall of a channel or channels 8, the opposite wall of the channels being formed by partitions 9 when saws are used in the gin, and by the body of the gin cylinder, when the machine is constructed as shown in Figs. 8, 9 and 12 of the drawings. Partitions 9 have attached strips 9a of a felt or other similar material, said strips serving the purpose of keeping external air from entering the channel at the side of the saws. The cross sectional area of the channel is reduced to a minimum consistent with the efficient operation of the machine, and by so doing the quantity of air required and consequently the size of the current producing apparatus and the amount of power is reduced. The cross sectional area of the channel is substantially the same throughout its length to maintain substantially the same velocity and lint-removing action throughout the length of the channel. The concave together with the features of construction explained in connection therewith constitutes a preferred form of nozzle between the ginning saws or devices and the tube or hollow member 3 for conveying the lint cotton from the saws to the said tube.

"Within the scope of the invention the nozzle may, however, be modified, as the essential feature of this part of the invention consists of a nozzle or tubular conveying means between the saws or ginning devices and the tube or hollow member 3 irrespective of exact details of construction.

"The currents of air are induced by a suction apparatus. * * * The suction apparatus causes the air to pass into and through the channel 8 along the concave and through the slot 13a into the tube, and from the tube to the pipe 12 into the suction fan, and from the latter by the discharge blast pipe 13 to any desired point. The current of air impinges against and passes around the teeth of the gin saws over a large portion of the periphery of the latter, thus disengaging the lint from the saw teeth. The lint is then drawn down through the slot 13a into the tube 3, and from the latter by the pipe 12 into the suction fan and is discharged through the blast pipe 13."

The Murray patent has a total of 82 claims. Only one of them is here in suit; this is claim 80, which is as follows:

"In a gin saw employing suction currents of air for removing cotton from the saws, the combination of a series of saws, a suction nozzle having its opening disposed adjacent the saw teeth, and a suction chamber in communication with the suction nozzle."

Wesley A. J. Hodo filed application April 18, 1916, and was granted a patent on November 7, 1916, for a "cotton ginning, cleaning and bleaching mechanism." This is the alleged infringing machine.

From the specification, I copy from page 1, line 9 to line 27:

"This invention relates to cotton gins and the objects of the same are to provide means for removing lint from the gin saw teeth in a positive and practical and highly efficient manner; to provide means for treating the cotton with air after it leaves the gin saw teeth for the purpose of cleaning and bleaching the cotton, and to provide efficient means for taking care of the cotton after it leaves the saw teeth. It is old in the art to strip the lint cotton from the saw teeth with either a blast or a suction draft, but so far as I know there is no gin which successfully strips the lint cotton from the saw by a suction draft of air."

The following is Figure 1 taken from the Hodo patent 1,203,739, and shows a vertical section of a gin frame and the air suction attachment and a section of the condenser:

Page 1 of the patent from line 76 to and including line 1 at the top of page 2 of patent:

"A part of a gin frame is shown in Fig. 1, in which is mounted a shaft $l$, on which is mounted a gang of saws 2, of the usual construction; 3 indicates the usual ribs of gin. The means for removing the lint cotton from the gin saw teeth consists of a nozzle 4, which communicates with a suction fan 5; the nozzle 4' terminates in close proximity to the saw teeth, being just far enough away from the saw teeth to prevent the saw teeth from striking the nozzle. The nozzle 4, as shown in Fig. 1, illustrates a device which has been successfully used in carrying out the objects above set forth. The position of the nozzle is preferably not lower than the shaft 1 of the gang of saws; the nozzle 4 consists of a hollow structure rectangular in cross-section and having the upper and lower walls thereof parallel to each other. The lower wall of the nozzle has a projection 6, terminating within the space adjacent to the cleaning and bleaching chamber 7. The object of this wall 6' projecting into space, is to produce a vacuum or dead air space along a line across the entire nozzle substantially at the point 8. The enlarged space in the chamber 7 causes an eddying of the air as it leaves the nozzle and this eddying is cyclonic in effect, producing a whirling motion of the lint which has been stripped from the saw teeth. In the lower part of the chamber, substantially about the space 9, there will be a dead air space in which dust and dirt and shale will fall on the bottom 10, so that such trash, dirt and shale may be removed."

Henry W. Graber filed application April 20, 1896, and was granted letters patent No. 568,610 on September 29, 1896. His invention was for new and useful improvements in cotton gins. This patent is before the court bearing upon the prior art.

From the Graber patent, page 1, line 60 to line 89:

"The air-blast system for driving lint cotton from the teeth of gin saws is objectionable, although the gin-flue is constructed without angles, bends, or curves, in that the air-blasts cannot practicably expel dead air and move the large mass of lint-cotton with sufficient rapidity to entirely avoid packing and choking the flue, and therefore the prior system referred to does not secure the high perfection required at this day in the art of ginning and handling cotton.

"The objects of my invention are to avoid the objections stated, to improve and simplify cotton gins or linters, to dispense with gin-brushes, and to avoid choking of the gin-flue, which occurs, where cotton is blown or driven by air-blasts off the saw teeth into a gin flue leading to a condenser or a suitable receptacle.

"To accomplish these objects, my invention consists, among other things, in the combination, with a cotton gin, of an air-suction apparatus arranged in operative connection with the gin and acting to suck the lint cotton directly from the rear portions of the saw teeth independently of and without a brush, and an apparatus for preventing the withdrawn lint cotton from passing into and through the air-suction apparatus."

"The air-suction acts directly upon the teeth of the saws, and the natural induced draft is obviously upon and in juxtaposition to the uppermost teeth of the gin-saws, or those teeth emerging from between the gin-ribs during the operation of the gin. The suction created in the manner described and shown instantly draws or sucks off the lint cotton from the saw teeth as, or immediately after, the teeth bearing the lint cotton emerge from between the ribs. This lint cotton is swiftly exhausted from the interior of the casing or hood 7 through the suction-flue into the chamber of the condensing apparatus and is deposited on the foraminous condenser-cylinder."

The following is Figure 1 taken from the Graber patent, No. 568,610, and is a broken vertical sectional view of a cotton ginning apparatus or linter embodying Graber's invention:

From the Graber patent, page 2, line 15 to and including line 44:

"The numeral *1* indicates the gin-breast; *2*, the roll-box; *3*, the saws, and *4* the gin-ribs of a cotton gin. The rear upper circular or curved part is lined,

as usual, with sheet metal or other material, as at 5, and a transverse beam or timber 6, forming a part of the gin-frame, is arranged above the saws and in rear of the upper ends of the gin-ribs. In the example shown in the drawings the rear portion of the gin-frame is provided with a funnel or hood-shaped casing 7, wholly inclosing the rear portion of the gin-saws and extending forward under the same to provide a clear space between the forward extension of the bottom wall of the casing or hood and the lower-most saw teeth. The top wall of the casing or hood projects upwardly, as at 8, in such proximity to the transverse beam or timber 6 as to create or provide a comparatively narrow air conduit or inlet 9, comprising a transverse passage which extends the full width of the gin, or approximately so.

"The outer or air-receiving end portion of the air-conduit 9 communicates with the atmosphere and may be closed or opened by a valve 10, or any suitable construction. The lower end of the conduit is in communication with the air-suction chamber 12, formed in the rear of and about the saws, through the medium of the casing or hood 7."

On the final hearing of this cause on the merits, the plaintiffs offered in evidence the patent in suit and evidence that the Murray Company is exclusive licensee by grant from Murray. The plaintiffs offered in evidence the Hodo patents and also a copy of a catalogue published by the Hodo Cotton Gin Company. They offered the deposition of a mechanical expert, and the defendant offered the cross-examination of this witness. The defendant introduced in evidence copies of patents set up in his answer on the prior art in ginning cotton. He offered no further evidence.

The mechanical expert whose deposition is before the court testified as a witness for the complainant, and his facts, premises, and conclusions reached generally favor the complainants' viewpoint. The defendant offers the cross-examination of the expert, but no further evidence of any character either lay or expert; therefore the court has been called upon to feel its way step by step to what it believes to be a conclusion which reflects the respective rights of the parties before it.

[1] I have studied the Murray patent here in suit, also the Hodo patents, and also the patents before the court offered by the defendant showing the art of ginning cotton at the time Murray filed his application for the patent here in suit.

It is my view that Hodo in his invention makes use of the same principle that is used in the Murray gin. However, at the time Murray filed his application on March 23, 1904, the art of ginning cotton then showed cotton gins employing suction currents of air for removing cotton from the saw teeth and the combination of a series of saws, devices having openings close to the saw teeth and suction chambers in direct physical connection with the devices arranged to suck the lint cotton from the saw teeth.

[2] Considering the patents before the court showing the prior art, the Murray gin does not embody a primary invention. It is only an improvement of the "prior art." His claim 80 here in issue is couched in very broad and comprehensive terms but cannot have the liberal construction to which it would be entitled were his the first machine to use the principle of suction of air in combination with saws for ginning or linting cotton. Two or three inventors before

Murray, copies of whose patents are now before the court, had used the well-known principle of suction of air in machines invented to lint cotton.

The Murray specifications and descriptions of his invention and the six sheets of the Murray drawings in the light of the explanation of said drawings in the specification, I find that the inventive concept of Murray is illustrated in figure 5 above, and that his preferred form of nozzle there illustrated is in his specifications and claims described and claimed variously as "means having an arcuate contour," "conduit having an opening," "casing," "concave," and "nozzle."

Both complainants and defendant have made much use of the word "nozzle" in their specifications and claims. It is but a word after all, and in the court's view does not very well describe the part of the machine referred to in either of the patents. A "nozzle" recalls to the mind the long narrow device, for instance, that attached to the free end of the fire hose. Such a thing is open on the end only, not on its side as well, as is the case with the so-called tubular "Murray nozzle." This word is equally far from closely defining the short and very broad air inlet parallelogram in shape of the Hodo gin.

The principle used and developed by the inventors in their several machines for ginning cotton by use of suction current of air is as follows: The tendency of the rapidly entering air is to free the lint cotton held by the teeth of the revolving saw and carry such lint along with it as it flows onward through the chamber, of whatever size and shape, that lies between the above-mentioned narrow space and the suction fan.

The chamber into which the fast moving air enters after passing through the narrow space described in Murray's device, relatively long compared with—that is, its nozzle shape—while in the case of Graber the width is greater for the same length; but the principle is the same in each case, i. e., the fast moving air passing through a narrow orifice frees the lint cotton from the saw teeth and carries it into a chamber beyond. The shape and relative size of such chamber is immaterial.

The term "nozzle" may or may not be descriptive of the shape of such chamber and in my view is immaterial to the principle here involved.

[3] As I have said above in view of the ideas and conceptions that had appeared and been embodied in cotton gins and been patented before Murray's application for a patent was filed, I must hold that his inventive concept and the patent issued to him is not a pioneer patent. The claims of his patent must be limited in their scope to the actual combination of essential parts as shown in his drawings and described in his specifications and cannot be construed and held to cover other combinations of elements of different construction and arrangement. Kokomo Fence Machine Co. v. Kitselman, 189 U. S. 8, 23 Sup. Ct. 521, 47 L. Ed. 689; Auto Piano Co. v. Amphion Co., 186 Fed. 159, 108 C. C. A. 291.

The situation which is present in this case has frequently come before the courts, and the governing rule has been clearly expressed by Judge Colt, speaking for the Court of Appeals for the First Circuit. In Mossberg v. Nutter, 135 Fed. 95, 99, 68 C. C. A. 257, 261, Judge Colt said:

"In approaching a patent, we are to look primarily at the thing which the inventor conceived and described in his patent, and the claims are to be interpreted with this particular thing ever before our eyes. In confining our attention too exclusively to a critical examination of the claims, we are apt to look at them as separate and independent entities, and to lose sight of the important consideration that the real invention is to be found in the specification and drawings, and that the language of the claims is to be construed in the light of what is there shown and described."

On the oral argument of this cause before the court at Dallas and also in their briefs, the attorneys for the plaintiffs admit that the defendant Hodo had added a new and novel element in a "cyclonic cleaning chamber" and also a nozzle specifically different in shape from the nozzle shown in the Murray machine.

To permit the patentee Murray to include the defendant Hodo's nozzle under claim 80 of his patent would be to permit him to claim something that does not emerge from his description and drawings. This should not be permitted.

A decree will be entered dismissing the plaintiffs' bill because of noninfringement, and the costs will be adjudged against them.